■ In the Matter of the Arbitration between ROCKWELL INTERNATIONAL CORPORATION, Respondent-Appellant, and BTR DUNLOP, INC., Appellant-Respondent. [596 NYS2d 72] —Judgment, denominated order, of the Supreme Court, New York County (Norman C. Ryp, J.), entered January 9, 1992, which

granted the petition to the extent of modifying an arbitration award on the ground that the arbitrator exceeded his authority, and directed respondent BTR Dunlop, Inc. to pay petitioner Rockwell International Corporation the amount of $1,942,422, unanimously reversed, on the law, the petition dismissed and the award confirmed, without costs. Respondent shall pay interest on the amount owed to petitioner from March 10, 1989.

In December 1988, Rockwell entered into an asset sale agreement to sell its Measurement and Flow Control Division to respondent BTR Dunlop. In March 1989, BTR Dunlop purchased the division for $437.5 million plus assumption of liabilities. The contract of sale provides for the adjustment of the purchase price to reflect the difference in the combined net assets of the division as indicated in the closing statement dated March 10, 1989 and in the agreement, which incorporates a net asset figure of $167,633,000 taken from a September 30, 1988 statement. The contract recites that the closing statement is to be prepared in conformity with the September 1988 statement "including the consistent application of generally accepted accounting principles." In the event of a dispute regarding the closing statement, the parties are to "negotiate in good faith to resolve any disputes" and, if unsuccessful, "the matters shall be reviewed by Price Waterhouse, New York, New York. The parties agree to accept the opinion of Price Waterhouse as the final determination with respect to such matters."

BTR Dunlop disputed the amount of net assets reflected in the closing statement, and the matter was submitted to Price Waterhouse for arbitration. The firm reduced the closing net asset figure by over $5.5 million. However, it also increased the net assets reflected in the September 1988 statement by over $1.7 million. The company stated: "The corrections made by Rockwell to the March 10, 1989 Closing Statement of Net Assets and the resulting net increase thereto were deemed appropriate. However, the benefit of such increase that arises from the application of the Agreement's purchase price adjustment mechanism is the result of Rockwell's earlier errors with respect to the September 30, 1988 Statement of Net Assets. It was thus disallowed to Rockwell".

The net effect of these adjustments requires BTR Dunlop to pay $203,424 as an adjustment for the increase in net asset value from the September 1988 statement to the March 1989 closing statement. However, without the adjustment to the

September 1988 figure, which Rockwell contends is outside the scope of the arbitrator's authority, BTR Dunlop would be required to pay over $1.9 million as a purchase price adjustment.

Supreme Court agreed that Price Waterhouse had exceeded the authority conferred upon it by the parties and vacated so much of the award as adjusted the September 1988 net assets. BTR Dunlop appeals from this ruling, and Rockwell cross-appeals to the extent the order directed the payment of interest from the date of the arbitration award rather than the date of the closing.

By its terms, the contract between the parties, and the arbitration provision contained therein, is governed by New York State law. The parties to a contract are free to determine the scope of submitted matters and "may refer to arbitration a single controversy arising out of one transaction or all controversies which may arise during a period of the continuing relationship between the parties. In form the agreement to arbitrate may be drafted to specify what is to be included or it may be drawn to specify what is to be excluded" (Stanley & Son v Trustees of Hackley School, 42 NY2d 436, 438). In this case, the parties agreed to arbitrate "any disputes regarding the Closing Statement of Net Assets."

We do not agree with Supreme Court that the scope of the review to be conducted by Price Waterhouse is limited to inaccuracies in the closing statement of net assets and does not extend to defects in the earlier September 1988 statement. First, while the arbitration provision could have been more clearly drafted, it is significant that it is included in the section of the contract entitled "Purchase Price". Second, the seller expressly represents that the September 30, 1988 statement of net assets "fairly presents the assets and liabilities of the Business" and "has been prepared in conformity with generally accepted accounting principles." To reason, as Rockwell does, that the scope of the arbitration provision is limited to review of the March 1989 net asset statement would prevent the accountant from making the comparison of net asset figures, arrived at by the application of identical accounting principles, required by the contract. The net effect would be to render arbitration a futile exercise, requiring resort to the judicial forum by effectively precluding the arbitrator from making "a final and definite award upon the subject matter submitted" (CPLR 7511 [b] [1] [iii]). This is an absurd result which vitiates the effect of the arbitration provision and thus cannot be presumed to have been the

intent of the parties. Given the context of the arbitration provision, the general intent is that any dispute over the purchase price adjustment, including the accuracy and fairness of the net asset statements used in determining that adjustment, is to be submitted to Price Waterhouse for "final determination".

This Court has had occasion to comment on the public policy considerations applicable to the construction of arbitration agreements, including the bar against simultaneous pursuit of claims before the courts and in arbitration *(Avon Prods. v Solow,* 150 AD2d 236) and the minimal role assigned to the courts in supervising arbitration practice as a means to conserve judicial resources *(Szabados v Pepsi-Cola Bottling Co.,* 174 AD2d 342; *Matter of Wertlieb [Greystone Partnerships Group],* 165 AD2d 644). The dispute between the parties to this transaction is entirely appropriate to resolution by an accounting firm pursuant to the arbitration provision incorporated into the purchase agreement and requires no judicial intervention *(Rio Algom v Sammi Steel Co.,* 168 AD2d 250, *lv denied* 78 NY2d 853).

With respect to the cross-appeal, we note that the agreement provides that interest will accrue "for the period beginning on the Closing Date and ending on the date of payment." Accordingly, Supreme Court's determination that interest accrue from June 7, 1991, the date of the arbitration award, is erroneous. Concur—Carro, J. P., Ellerin, Wallach, Kassal and Rubin, JJ.